**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  15-cv-00556

PATRISHA McEACHERN,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA,
COLORADO; in its official capacity
MONTEZUMA COUNTY SHERIFF'S OFFICE; a governmental entity
DENNIS SPRUELL, in his individual capacity;
LYNDA CARTER, in her individual capacity; and
SHERIFF STEVEN NOWLIN, in his official capacity

    Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff Patrisha McEachern ("Plaintiff" or "Deputy McEachern"), by and through

counsel Matthew J. Cron and Siddhartha H. Rathod of RATHOD | MOHAMEDBHAI LLC,

respectfully alleges for her Complaint and Jury Demand as follows:

**I.      INTRODUCTION**

Deputy McEachern was employed as a patrol deputy at the Montezuma County

Sheriff's Office ("MCSO").  As the only female patrol deputy employed by the MCSO at

all relevant times, Deputy McEachern experienced sex-based hostility, and she was

subjected to severe and disparate discipline for minor offenses.   High-ranking

supervisors at the MCSO, including Lieutenant Ted Meador, frequently commented that

women had little use in law enforcement.  After her verbal complaints of discrimination

were dismissed without investigation, Deputy McEachern submitted a written complaint

about the discriminatory treatment that she had been experiencing.  Less than two weeks later, she was terminated.  In the termination letter, Deputy McEachern's complaint about sex discrimination was listed as a reason for her termination.  Accordingly, Deputy McEachern seeks redress for the retaliatory and discriminatory conduct by Defendants in violation of her rights of free speech and equal protection under the First and Fourteenth Amendments to the Constitution of the United States, and under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

## II.    JURISDICTION, VENUE, AND PARTIES

1.    Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343.  This action is authorized and instituted pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000e, *et seq.*

2.    Deputy McEachern filed a complaint with the Equal Employment Opportunity Commission on November 11, 2013.  She received notice of her right to sue on December 19, 2014.  As such, she has administratively exhausted her remedies under Title VII.

3.    Deputy McEachern's claim for attorneys' fees and costs is proper under the enforcement provisions of 42 U.S.C. § 1988 and Title VII, 42 U.S.C. § 2000e-5(g)(2)(b)(i).

4.    Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All of the employment practices alleged herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado, and

at the time of the events giving rise to this litigation, all of the parties resided in Colorado.

5.    Plaintiff Deputy McEachern was employed by the Montezuma County Sheriff's Office from March 2011 until she was terminated on November 12, 2013.  At all relevant times hereto, Deputy McEachern was a citizen of the United States and a resident of and domiciled in the State of Colorado.

6.    Defendant The Board of County Commissioners of the County of Montezuma County ("the County") is a political subdivision of the State of Colorado. The term "The Board of County Commissioners of the County of Montezuma" is the designation used to sue Montezuma County pursuant to C.R.S. § 30-11-105.  The County is the governing body for Montezuma County, has overall responsibility for the operation of Montezuma County, and is deemed an individual within the meaning of 42 U.S.C. § 1983.

7.    Defendant Montezuma County Sheriff's Office is the law enforcement department of Montezuma County.  Defendant Montezuma County Sheriff's Office was Deputy McEachern's employer within the meaning of Title VII.

8.    Defendant Dennis Spruell was the elected Sheriff of Montezuma County, a final policymaker for Montezuma County, and an agent of Montezuma County.  Sheriff Spruell was a citizen of the United States and a resident of Colorado, and at all relevant times was acting under color of state law in his capacity as the Sheriff of Montezuma County.

9.    Defendant Lynda Carter was the appointed Undersheriff of Montezuma County.   Undersheriff Carter was a citizen of the United States and a resident of

Colorado, and at all times was acting under color of state law in her capacity as the Undersheriff of Montezuma County.

10.     Defendant Steven Nowlin is the current Sheriff of Montezuma County. Sheriff Nowlin is a citizen of the United States and a resident of Colorado.

### III.     FACTUAL ALLEGATIONS

**Deputy McEachern was a High-Performing Patrol Deputy**

11.     Deputy McEachern was hired by the MCSO in March 2011.  Her first day of employment at the MCSO was on or about March 28, 2011.

12.     Deputy McEachern was a high-performing patrol deputy.

13.     During Deputy McEachern's employment at the MCSO she received numerous commendations regarding her performance from various supervisors.

14.     On January 10, 2012, Patrol Sergeant Travis Anderson recommended that Deputy McEachern be promoted to a Field Training Officer ("FTO") because she had "the drive, skills, and abilities to help lead the FTO program into the future."

15.     On March 23, 2012, Patrol Lieutenant Doug Parker stated that Deputy McEachern's "work is a credit to our agency and to our profession."

16.     On January 26, 2013, Sergeant John Hargraves stated that Deputy McEachern's "commitment to the team concept is inspiring and should be emulated by all."

17.     Deputy McEachern also received commendations from members of the public for her police work.

18.     Deputy McEachern earned the respect and admiration of her peer patrol deputies.  She was regarded by her peers as an excellent patrol officer, who was hard-working, energetic, smart, courageous, and a team-player.

19.     Many of Deputy McEachern's peer officers wrote letters of recommendations on her behalf when she applied to become an FTO in late 2013.

20.     Patrol Sergeant Jonathan Clark wrote that, "[h]aving over ten years of [l]aw [e]nforcement experience, possessing firsthand knowledge of Deputy McEachern's work performance and abilities, she would undoubtedly be my number one choice for this [FTO] position."

21.     Patrol Deputy John Hancock wrote that Deputy McEachern "has demonstrated an exceptional work ethic and dedication to the job.  She is always an asset on calls for service due to her knowledge on a wide variety of subjects and investigatory skills and is ready to assist even if it's not her call for service.  She is a team player."

22.     Patrol Deputy Brad Ray wrote that "[i]t is with great pride and honor I have been blessed with working with such a great person and an outstanding deputy . . . Deputy McEachern is a team player always assisting and encouraging others when they are unsure of how a task should be performed . . . ."

23.     Patrol Deputy Mark Kennell wrote that "I believe Deputy McEachern would be an excellent candidate as a [FTO] . . . [her] knowledge, skills and abilities have been proven with the work she has generated while being employed with [the Sheriff's Office]."

**Lieutenant Ted Meador Exhibits Overt Hostility toward Deputy McEachern and Disparages the Role of Women in Law Enforcement**

24.     Lieutenant Ted Meador supervised the detectives division during the time that Deputy McEachern was employed by the MCSO.   As a member of the patrol division, Deputy McEachern was not directly under Lt. Meador's command, but he was her superior and they interacted on a daily basis.

25.     Lt. Meador exhibited hostility toward Deputy McEachern from the outset of her employment.   He frequently ignored her when she spoke to him, and he was rude and unfriendly on the rare occasions when he did acknowledge her.

26.     Lt. Meador's hostility caused Deputy McEachern to inquire with others at the MCSO if there was anything she had done to offend Lt. Meador.   Deputy McEachern was advised by several other female employees that Lt. Meador simply did not like women.

27.     Lt. Meador made his dislike of Deputy McEachern well known to other officers at the MCSO.   He often remarked that he would not have hired her, and that he hoped she would be fired.

28.     At a social function, Lt. Meador told Patrol Deputy Chris Barry that he would never speak to him again if he discovered that Deputy Barry was romantically involved with Deputy McEachern.

29.     On another occasion, Lt. Meador drove to Denver to meet with the Colorado Attorney General's Office regarding an investigation.   During this car ride, Lt. Meador went on a tirade about Deputy McEachern, stating that she never should have been hired, that she was not fit for law enforcement, and that the sound of her voice on the radio made him cringe.

6

30.     Lt. Meador's dislike of Deputy McEachern was a result of her sex.

31.     On numerous occasions, Lt. Meador made comments to other members of the MCSO that women were not suited for law enforcement.  He made known his belief that female officers were not capable of performing police work "on the streets."

32.     Sheriff Spruell also made comments suggesting that he did not believe women had much use in law enforcement.

33.     Whenever Sheriff Spruell received complaints about a deputy speeding, he would ask whether Deputy McEachern was working at the time.

34.     During Deputy McEachern's employment at the MCSO, she was the only female in the patrol division.

**Lt. Meador Attempts to Convince Others at the MCSO to Terminate Deputy McEachern**

35.     On or about March 7, 2012, Deputy McEachern was involved in the arrest of an attempted homicide suspect who was considered armed and dangerous.

36.     During this incident, Deputy McEachern discharged her service weapon while in hot pursuit of the suspect.

37.     After the incident, Deputy McEachern performed a walkthrough of the scene with Lt. Meador and others.

38.     After the incident, Sgt. Clark and Lt. Parker created an action plan intended to provide Deputy McEachern with additional training that she had not received.  Action plans were not a form of discipline, and were intended to help an officer who may not have received a particular training.

39.     Deputy McEachern was not disciplined for her actions during this incident, as it was determined that she had not done anything illegal or in violation of policy.

40.     Despite being cleared of wrongdoing, Lt. Meador attempted to convince others at the MCSO that Deputy McEachern should be terminated.  However, then-Undersheriff Robin Cronk and others were not persuaded, and refused to terminate Deputy McEachern.

41.     In August 2012, Deputy McEachern was dispatched to a call for criminal trespass.  When she reported to the scene, she observed five individuals near the address of the trespass.  One of the individuals aggressively ran toward Deputy McEachern and she was forced to deploy her taser on that individual.  Because the other individuals started to approach, Deputy McEachern unholstered her service weapon, and held the other individuals at bay until backup could arrive.

42.     Deputy McEachern had not had multiple assailant training, and was commended by her peers for handling the incident without injury to herself or the civilian individuals.

43.     After the incident, Deputy McEachern informally sought advice from Detective Tyson Cox, who discussed alternative ways that Deputy McEachern could have handled the situation.  Deputy McEachern often sought this sort of feedback from other officers because she was motivated to improve as an officer.

44.     Detective Cox then told Lt. Meador about his conversation with Deputy McEachern, and Lt. Meador instructed Detective Cox to write a letter criticizing Deputy McEachern's handling of the incident.

45.     Deputy McEachern was not disciplined for this incident.

**Those Under Lt. Meador's Influence Assume Supervisory Positions over Deputy McEachern**

46.     In June 2013, Undersheriff Cronk resigned as the undersheriff at the MCSO, and Lynda Carter, an assistant district attorney for Montezuma County, was appointed as the new Undersheriff.

47.     As an assistant district attorney, Undersheriff Carter had worked closely with Lt. Meador on a number of cases and they enjoyed a personal friendship. While she was an assistant district attorney, Undersheriff Carter had confided in Lt. Meador her opinion of certain deputies at the MCSO.

48.     Lt. Meador was instrumental in Undersheriff Carter's appointment.

49.     Because of her personal relationship with Lt. Meador, Undersheriff Carter viewed Deputy McEachern with a tainted opinion and believed she was a bad officer.

50.     Upon joining the MCSO, Undersheriff Carter informed Lt. Parker that she intended to take advantage of any opportunity to discipline Deputy McEachern. Lt. Parker stated that Deputy McEachern was a good officer, but Undersheriff Carter made it clear that Deputy McEachern was on a very short leash.

51.     Undersheriff Carter constantly brought up incidents concerning Deputy McEachern that were in the past and had already been dealt with.

52.     On or about August 1, 2013, Adam Eastman was promoted from the detectives division, where he had served under Lt. Meador, to become the new lieutenant of the patrol division. Jason Spruell, another former detective under Lt. Meador, was transferred to the patrol division and promoted to the rank of sergeant.

53.     Both Lt. Eastman and Sgt. Spruell were heavily influenced by Lt. Meador and shared his views, including his bias against women in law enforcement.

9

**Deputy McEachern Is Suspended for Three Days by Lieutenant Eastman on His First Day as Lieutenant**

54.     After the new command staff assumed control, Deputy McEachern's conduct was subjected to hyper scrutiny.

55.     On or about July 13, 2013, Deputy McEachern was involved in a one-vehicle accident when she backed her patrol vehicle into a sign post.

56.     Deputy McEachern was instructed to complete a drug screen on July 15, 2013.  However, on that date, her patrol car battery died and the drug-testing facility closed by the time another deputy was able to jump her car.  Accordingly, Deputy McEachern submitted her drug screen first thing the next morning, which came back negative.

57.     On or about August 2, 2013, the day after Lt. Eastman was promoted to Patrol Lieutenant, he and Undersheriff Carter suspended Deputy McEachern for three days without pay.

58.     Other male deputies who were involved in vehicular accidents, including one-vehicle accidents, were not required to submit to drug screens.

59.     No male deputy received any discipline for getting into a vehicular accident or for not taking a drug screen.

60.     The day after Deputy McEachern was suspended, Undersheriff Carter boasted to two Cortez police officers that she had suspended Deputy McEachern for three days.  This conduct was in violation of MCSO policy 14.3.10, "Unbecoming Conduct."

**Deputy McEachern's Verbal Complaint of Gender Discrimination is Summarily Dismissed Without Investigation or Remedial Action**

61.     On August 9, 2013, after a patrol meeting, Deputy McEachern verbally complained to Lt. Eastman about the discriminatory treatment she was experiencing.

62.     Among other complaints, Deputy McEachern complained to Lt. Eastman about Lt. Meador's hostile treatment of her, and about Undersheriff Carter's discriminatory treatment.   Deputy McEachern also complained that members of the detectives division were spreading malicious rumors about her.

63.     Lt. Eastman had heard Lt. Meador make numerous critical comments about Deputy McEachern in particular and women in law enforcement generally.

64.     Lt. Eastman told Deputy McEachern that what she was feeling was a misperception.   He told her that he had never met another man with as much integrity as Lt. Meador.   Lt. Eastman did not even consider the possibility that Deputy McEachern's complaints about Lt. Meador were well-founded.

65.     Lt. Eastman also dismissed the complaints about Undersheriff Carter on the grounds that she was his boss and there was nothing he could do.

66.     Lt. Eastman promised only that he would attempt to address the rumor-spreading by the detectives.   His solution for addressing this issue was to bring it to the attention of Lt. Meador.

67.     After rejecting Deputy McEachern's complaint, Lt. Eastman undertook no further investigation of her complaint, nor did he refer her complaint to another person(s) or entity(ies) for investigation.   Lt. Eastman also took no remedial action to prevent Lt. Meador or Undersheriff Carter from continuing to treat Deputy McEachern with hostility.

**Deputy McEachern Continues to be Subjected to Disparate Treatment and is Denied a Promotion for which She is Qualified**

68.     After verbally complaining to Lt. Eastman about discriminatory treatment, Deputy McEachern's work performance continued to be heavily scrutinized in a way that was unique to her as the lone female deputy at the Sheriff's Office.

69.     On or about September 11, 2013, an email message went out to the deputies regarding a legal updates training.  The email stated that deputies would need to attend a training, but did not require them to pick a specific training to attend.

70.     On or about September 14, 2013, Deputy McEachern injured her left arm and hand while on duty.  Deputy McEachern notified her sergeant and Sheriff's Assistant Wanda Martin, who was in charge of the MCSO's workers compensation claims.

71.     On or about September 16, 2013, Deputy McEachern filled out the appropriate paperwork with Ms. Martin.  Deputy McEachern then attempted to coordinate an appointment with a workers compensation doctor in Durango, Colorado. Accordingly, Deputy McEachern scheduled an appointment with La Plata Family Medicine for September 19, 2013.

72.     On the morning of September 19, 2013, Deputy McEachern received a text message from Sgt. Spruell, who asked why she was not at the legal training update.  Deputy McEachern rescheduled her workers compensation appointment and attended the legal training update.

73.     Although Deputy McEachern followed the appropriate procedure for rescheduling her appointment, Sgt. Spruell submitted a letter to Lt. Eastman on

September 24, 2013, recommending that Deputy McEachern be disciplined for failing to notify Ms. Martin of her need to reschedule her workers compensation appointment.

74.     Deputy McEachern had in fact notified Ms. Martin that she had cancelled her September 19, 2013 appointment and rescheduled it for the next day.

75.     In early October 2013, Deputy Hancock informed Deputy McEachern that Deputy Bryce Queen, a deputy who had recently been promoted to the detectives division under Lt. Meador, stated that associating with Deputy McEachern was akin to associating with a drug user, and was detrimental to an officer's reputation at the MCSO.

76.     Also in October 2013, Deputy Jesse Minor told Deputy McEachern that Sgt. Spruell had questioned him about the validity of her injury that caused her to need workers compensation.

77.     Male deputies who were injured at work were not questioned about their injuries.

78.     On October 19, 2013, Deputy McEachern applied for the FTO position. Her application included letters of recommendation from six other officers.

79.     The FTO position was an important step in moving up the chain of command.   Besides a pay raise, deputies received additional responsibility and credibility in the department.  The FTO position is considered a promotion.

80.     At the time Deputy McEachern applied for the FTO position, the MCSO was actively looking for officers to attend FTO training.

81.     Soon after she applied, Lt. Eastman told Deputy McEachern that her request to become a FTO was denied because of budgetary concerns, and that nobody would be attending FTO training.

82.     However, Deputy Hancock and Deputy Minor were selected to attend FTO training.

83.     The MCSO intentionally delayed sending Deputy Hancock and Deputy Minor to FTO training so that it would not have to deal with the fallout from not selecting Deputy McEachern.

84.     Deputy Hancock was one of the deputies who had recommended Deputy McEachern for the FTO training.

85.     Similarly, Deputy McEachern was denied the ability to become an Officer in Charge ("OIC").

86.     The OIC position was filled by deputies who were in charge when there was no sergeant on duty.   At those times, the OIC would function as the acting sergeant.   The OIC position was important because it helped deputies prove that they were capable of leadership positions.

**Deputy McEachern is Terminated Almost Immediately after Filing a Formal, Written Complaint of Discrimination**

87.     On November 1, 2013, Deputy McEachern filed a written complaint through her chain of command regarding the disparate treatment that she had experienced.

88.     Deputy McEachern stated that "Detective Lt. Ted Meador and Undersheriff/Administrative Supervisor Lynda Carter want me fired and are targeting me

because I am a female."  Deputy McEachern listed several examples of ways that she had been treated differently on account of her sex.

89.     On November 5, 2013, Deputy McEachern received a response from Lt. Eastman.  The letter stated that her complaints were "serious in nature," even though they were the same as the issues raised in her August 9, 2013 verbal complaint that had been ignored.

90.     Lt. Eastman stated that he needed additional information from Deputy McEachern in order to commence an investigation.  He stated that all the information needed to be provided to him "no later than 1600 hours" on November 8, 2013.

91.     Deputy McEachern objected to Lt. Eastman conducting the investigation as he had previously ignored her verbal complaints of sex discrimination.  Thus, Deputy McEachern had good reason to believe that Lt. Eastman was not capable of conducting a fair and objective investigation.

92.     Because her complaint involved high-ranking members of the command staff, particularly Undersheriff Carter and Lt. Meador, Deputy McEachern requested that her complaint be investigated by an outside agency.  Lt. Eastman stated that was not a possibility.

93.     On November 8, 2013, Deputy McEachern submitted to Lt. Eastman a folder containing a chronological outline with dates and witnesses supporting her sex discrimination and hostile work environment complaints.   Deputy McEachern also submitted a letter again objecting to Lt. Eastman conducting the investigation because he was a participant in the discriminatory treatment.

94.     On November 8, 2013, Deputy McEachern sent the same folder of information to Montezuma County Administrator Melissa Brunner.

95.     There was no policy prohibiting any employee from complaining to the Montezuma County Administration office.

96.     There was no policy or procedure at the MCSO informing employees how to complain when the internal investigator had a clear conflict of interest.

97.     On November 12, 2013, Deputy McEachern was called into Lt. Eastman's office and informed that she was no longer an employee of the MCSO.  She was given a written termination letter.

98.     The termination letter was signed by Lt. Eastman and Undersheriff Carter.

99.     The letter listed eight separate incidents for which she had either received minor discipline or no discipline at all.

100.    The ninth and final reason listed in the termination letter was that Deputy McEachern had complained to the Montezuma County Administration office about sex discrimination.

101.    The MCSO did not investigate Deputy McEachern's complaints about sex discrimination before terminating her.

102.    On November 21, 2013, after she had already been terminated, Deputy McEachern was told by Sheriff Spruell that the MCSO would investigate Deputy McEachern's complaint of sex discrimination.

103.    On December 2, 2013, Deputy McEachern met with Sheriff Spruell as part of her grievance process.  Deputy McEachern waited by herself while Sheriff Spruell

allegedly "reviewed" her termination.   When he returned shortly after, he informed Deputy McEachern that she was still terminated.

104.   After Deputy McEachern's termination was ratified by Sheriff Spruell, the MCSO hired Mountain States Employers Council ("MSEC") to conduct an investigation. The MCSO instructed the MSEC investigator to limit the scope of his investigation to several discrete issues.

105.   The MSEC investigator was instructed not to investigate Deputy McEachern's complaints regarding discriminatory and hostile treatment by Lt. Meador or Undersheriff Carter.   The MSEC investigator was also instructed not to investigate whether Deputy McEachern's termination was the result of sex discrimination and/or retaliation.

## IV.   STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983
### Fourteenth Amendment - Equal Protection
(*Against Defendants Montezuma County Board of Commissioners, Sheriff Spruell in his individual capacity, Undersheriff Carter in her individual capacity, and Sheriff Nowlin in his official capacity*)

106.   Deputy McEachern hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

107.   Deputy McEachern's claim for violation of equal protection under the Fourteenth Amendment to the United States Constitution is brought through the remedies provided by 42 U.S.C. § 1983.

108.   Deputy McEachern is a female and a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

109.    All Defendants to this claim, at all relevant times hereto, were acting under the color of state law.

110.    Defendants Sheriff Spruell and Undersheriff Carter are final policymakers for Montezuma County.  Defendant Undersheriff Carter personally made the decision to terminate Deputy McEachern's employment from the MCSO, and Defendant Sheriff Spruell personally ratified that termination decision.  Defendants Sheriff Spruell and Undersheriff Carter were motivated to terminate Deputy McEachern because of her gender.

111.    Defendants by and through the conduct of their employees and agents have unlawfully denied Deputy McEachern the benefits, privileges, promotional opportunities, and terms and conditions of her employment due to her gender.

112.    Defendants treated Deputy McEachern less favorably than her similarly situated male counterparts.  Despite her excellent job performance, Defendants scrutinized her performance as compared to male patrol deputies, and subjected her to discipline for conduct that male deputies were not disciplined for.  As a result, Deputy McEachern felt alienated and separate from her male counterparts.

113.    Even though Defendants knew that certain employees (including supervisors) at the MCSO treated Deputy McEachern differently because of her sex, they failed to take any prompt, effective, and remedial steps to eliminate this sex-based disparate treatment from the work environment.

114.    Deputy McEachern was subjected to adverse treatment because of her sex, including but not limited to the denial of promotion and termination of her employment.

115.    Deputy McEachern's sex was a motivating factor in Defendants' decision to terminate Deputy McEachern's employment.

116.    Defendants' reasons for terminating Deputy McEachern's employment were pretextual and unworthy of credence.  At all relevant times, Deputy McEachern performed the functions of her job competently and was qualified for the position of patrol deputy.

117.    Defendants engaged in the conduct described above with malice or with reckless indifference to Deputy McEachern's constitutional rights as provided by the Equal Protection Clause.

118.    Defendants Sheriff Spruell and Undersheriff Carter's discriminatory conduct violated clearly established rights belonging to Deputy McEachern of which reasonable governmental officials in their position knew or should have known.

119.    As a proximate result of Defendants' equal protection violations, Deputy McEachern suffered and continues to suffer injuries, damages and losses.

120.    The acts or omissions of each Defendant were the legal and proximate cause of Deputy McEachern's damages as may be proven at trial.

**SECOND CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983**
**First Amendment - Retaliation**
(*Against Defendants Montezuma County Board of Commissioners, Sheriff Spruell in his individual capacity, Undersheriff Carter in her individual capacity, and Sheriff Nowlin in his official capacity*)

121.    Deputy McEachern hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

122.    Deputy McEachern engaged in constitutionally protected activity, including but not limited to, her protest of Defendants' unlawful and discriminatory employment practices.

123.    In complaining about sex discrimination, and bringing Defendants' rampant sex discrimination to the attention of Montezuma County Administrator Brunner, Deputy McEachern engaged in constitutionally protected speech.

124.    Deputy McEachern's opposition to Defendants' discriminatory conduct was outside the scope of her ordinary job duties.

125.    Deputy McEachern's speech was not disruptive, and was related to objectionable governmental conduct, a matter of important public concern.

126.    Defendants' conduct caused Deputy McEachern to suffer injuries that would chill a person of ordinary firmness from continuing to engage in such constitutionally protected activity.

127.    Defendants' unlawful termination of Deputy McEachern's employment was substantially motivated as a response to Deputy McEachern's exercise of constitutionally protected speech.

128.    Defendants would not have terminated Deputy McEachern's employment but for her protected speech.

129.    Deputy McEachern's speech was calculated to expose the wrong doing of government officials.

130.    Deputy McEachern's right to speak out on issues of public concern outweighed any of Defendants' rights.

131.   Defendants engaged in the conduct described in this Complaint willfully, wantonly, maliciously, and in reckless disregard of Deputy McEachern's federally protected constitutional rights.

132.   Defendants Sheriff Spruell and Undersheriff Carter personally made the decision to terminate Deputy McEachern's employment in retaliation for her protected conduct and/or ratified the decision to terminate her employment.

133.   Defendants Sheriff Spruell and Undersheriff Carter are final policymakers.

134.   Defendants Sheriff Spruell and Undersheriff Carter are not entitled to qualified immunity as their conduct violated clearly established rights belonging to Deputy McEachern of which reasonable persons in their positions knew or should have known.

135.   The acts or omissions of Defendants were the legal and proximate cause of Deputy McEachern's damages as may be proven at trial.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 2000e, et seq.
### Gender/Sex Discrimination
(*Against Defendant Montezuma County Sheriff's Office*)

136.   Deputy McEachern hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

137.   Deputy McEachern, as a female employee, is a member of a class of citizens that is protected by Title VII.

138.   At all pertinent times, Deputy McEachern performed the functions of her job competently and was qualified for her position with the MCSO.

139.   The MCSO treated Deputy McEachern less favorably than her similarly situated male counterparts.  Deputy McEachern received discipline for conduct that

went unpunished for male counterparts, including but not limited to her termination. Deputy McEachern was denied training and promotions that less qualified and/or similarly situated male counterparts received.

140.   Deputy McEachern's verbal complaints about sex discrimination were summarily dismissed and/or ignored.

141.   Deputy McEachern's written complaint of sex discrimination was not investigated until after she had been terminated, and an investigator selected by the MCSO was instructed not to investigate Deputy McEachern's termination or many of the discriminatory issues that she raised in her complaints

142.   The MCSO's proffered reasons for terminating Deputy McEachern were mere pretext for discrimination.

143.   Defendant MCSO is liable for the acts and omissions of its agents and employees, including all supervisors of Deputy McEachern.

144.   The MCSO engaged in this conduct with malice or reckless indifference to Deputy McEachern's federally protected rights within the meaning of Title VII.

145.   The sex-related employment practices, and other acts or omissions of MCSO and its agents, supervisors, and employees reflect the MCSO's reckless and willful and wanton indifference or hostility to Deputy McEachern's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 2000e, et seq.**
**Retaliation**
(*Against Defendant Montezuma County Sheriff's Office*)

146.    Deputy McEachern hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

147.    Deputy McEachern engaged in activities and speech in opposition to employment practices prohibited by Title VII by speaking out about and opposing the discriminatory practices of the MCSO.

148.    Deputy McEachern spoke out against sex discrimination in the workplace because she had a reasonable and good faith belief that discrimination was occurring in the workplace.

149.    Deputy McEachern was terminated in retaliation for expressing her opposition to such discriminatory practices.

150.    Deputy McEachern's termination letter specifically listed her complaint about disparate treatment and sex discrimination as a reason for her termination.  Thus, Deputy McEachern has direct evidence that her complaints of sex discrimination was a but-for factor in her termination.

151.    Defendant MCSO's proffered reasons for her termination were mere pretext.

152.    Defendant MCSO is liable for the acts and omissions of its agents and employees, including all supervisors of Deputy McEachern.

153.    Defendant MCSO's conduct was engaged in with malice or reckless indifference to the federally protected rights of Deputy McEachern within the meaning of Title VII.

154.   The retaliatory employment practices, and other acts or omissions of the MCSO and its agents, supervisors, and employees reflect Montezuma County's reckless and willful and wanton indifference or hostility to Deputy McEachern's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Deputy McEachern respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:

a.   Declaratory relief and injunctive relief, as appropriate;

b.   Actual economic damages as established at trial;

c.   Any economic losses or injuries that Deputy McEachern has suffered to the present time or which Deputy McEachern will probably suffer in the future, including but not limited to loss of earnings or damage to her ability to earn money in the future, and other expenses;

d.   Compensatory, consequential, nominal, and special damages past, present, and future, in amounts to be proven at trial, including mental pain and suffering, inconvenience, emotional stress, impairment of the quality of life, humiliation and embarrassment, injury to reputation, economic and non-economic losses, financial hardship, loss of earning capacity, and all other damages as provided by law or equity;

e.   Punitive damages for all claims as allowed by law in an amount to be determined at trial;

     f.   Pre-judgment and post-judgment interest at the highest lawful rate;

     g.   Attorneys' fees and costs; and

     h.   Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 18th day of March 2015.

RATHOD | MOHAMEDBHAI LLC

*s/ Matthew J. Cron*
Matthew J. Cron
Siddhartha H. Rathod
Qusair Mohamedbhai
1518 Blake Street
Denver, CO 80202
(303) 578-4400 (t)
(303) 578-4401 (f)
mc@rmlawyers.com
sr@rmlawyers.com
qm@rmlawyers.com

ATTORNEYS FOR PLAINTIFF